UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KIMBERLY PALMESE,

                Plaintiff,

         - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION and ROSALIE FAVUZZA,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-5915 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Kimberly Palmese, proceeding *pro se*, brings this employment discrimination action against the New York City Department of Education ("DOE") and Principal Rosalie Favuzza (together, "Defendants"). Plaintiff brings a claim for retaliation pursuant to the Family and Medical Leave Act ("FMLA"), and claims for retaliation and discrimination pursuant to the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (*See generally* Am. Compl., Dkt. 17.)

Defendants filed a motion to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Mot. to Dismiss, Dkt. 24.) For the reasons explained below, the Court grants Defendants' motion to dismiss in part and denies it in part. The Court dismisses Plaintiff's NYSHRL discrimination claim for failure to state a claim. Plaintiff's FMLA claim, her NYCHRL claims, and her NYSHRL retaliation claim against both Defendants shall proceed.

# BACKGROUND

The following allegations are taken from Plaintiff's Amended Complaint and are assumed to be true for the purposes of this Memorandum and Order.

Plaintiff has been employed by the DOE since October 16, 2002.  (Am. Compl., Dkt. 17, at ECF[1] 8.)  She has been working at the District 22 Joan Snow Prekindergarten Center in Brooklyn, New York since September 2015, when she joined as an Assistant Principal.  (*Id.*)  Defendant Favuzza became Plaintiff's immediate supervisor in June 2019.  (*Id.*)  Plaintiff received Satisfactory end-of-year ratings every year from September 2015 until the 2019–20 school year, during which there were no ratings due to the COVID-19 pandemic.  (*Id.*)  Plaintiff also received a Satisfactory end-of-year rating for the 2020–21 school year.  (*Id.*)  In June 2021, Defendant Favuzza's job title changed from Director to Principal.  (*Id.*)

## I.    2021–22 School Year

Plaintiff did not receive any disciplinary letters until October 28, 2021, when Defendant Favuzza issued Plaintiff a disciplinary letter for insubordination.  (*Id.*)  This letter was issued because Plaintiff "was unable to report to the Coney Island Avenue location after [Defendant] Favuzza changed [Plaintiff's] site assignment at the last minute and [Plaintiff] did not have access to [her] normal means of transportation."[2]  (*Id.*)  On May 31, 2022, Plaintiff submitted a rebuttal

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] The address of Plaintiff's usual location of employment is not clear to the Court, but the Court notes that the New York City Public Schools website lists a "Joan Snow Pre-K Center at 1340 East 29th Street" in Brooklyn, New York for Geographic District 22.  *The Joan Snow Pre-K Center at 1340 East 29th Street*, New York City Public Schools, https://www.schools.nyc.gov /schools/Z063 [perma.cc/RW6Y-BWJF].  In contrast, the address Plaintiff lists for her place of employment when employed by Defendants, as well as the address she lists for Defendant Favuzza's place of employment, is the 22K 853 Joan Snow Prekindergarten Center at 1139 Coney Island Avenue in Brooklyn, New York.  (Am. Compl., Dkt. 17, at ECF 2–3.)

letter with supporting documentation to Defendant Favuzza, who placed the rebuttal letter in Plaintiff's personnel file but "refused to remove the [disciplinary] letter despite [Plaintiff]'s rebuttal." (*Id.*)

On November 23, 2021, Plaintiff applied for intermittent family leave under the FMLA to take care of her mother, who was diagnosed with pancreatic cancer. (*Id.*) Plaintiff's leave request was granted that same day. (*Id.*) Her mother died on December 21, 2021. (*Id.*)

On January 1, 2022, Plaintiff became sick with COVID-19, and so she remained on leave until January 11, 2022. (*Id.*) At 10:00 a.m. on the day Plaintiff returned from leave, January 12, 2022, she "received two disciplinary conference summonses from [Defendant] Favuzza." (*Id.* at ECF 8–9.) On January 14, 2022, Plaintiff emailed Community School District 22 Superintendent Julia Bove and Deputy Superintendent Matthew Melchiorre "expressing [her] concerns with [Defendant] Favuzza's untimely summoning [of Plaintiff] to disciplinary conferences" after Plaintiff had returned from leave, but Plaintiff "did not receive a response." (*Id.* at ECF 9.)

On January 20, 2022, Plaintiff received two more allegedly "unjustified" disciplinary letters from Defendant Favuzza. (*Id.*) Five days later, on January 25, 2022, Plaintiff filed a complaint with New York City's Special Commissioner of Investigations regarding Defendant Favuzza's alleged harassment of Plaintiff, and on January 27, 2022, Plaintiff emailed the receipt of her complaint submission to Superintendent Bove and Deputy Superintendent Melchiorre, but again did not receive a response. (*Id.*)

In the remaining months of the 2021–22 school year, Plaintiff received several more disciplinary letters and "a 48-hour disciplinary notice from [Defendant] Favuzza to report to three disciplinary meetings to discuss acts of insubordination and dereliction of duty." (*Id.* at ECF 9–11.) Plaintiff alleges that each of these letters was "unjustified" and based on allegations

that were "untrue," and though she submitted rebuttals to many of the disciplinary letters, they were not removed from her file.  (*Id.*)

At some point, Plaintiff scheduled a Special Complaint Hearing with New York City's Office of Labor Relations for June 15, 2022.[3]  (*See id.* at ECF 11.)  The day before the hearing, the United Federation of Teachers District Representative called Plaintiff's witnesses and told them that if they testified at the hearing, the District Representative "could not stop them from being retaliated against by [Defendant] Favuzza."  (*Id.*)  As a result, the witnesses "advised [Plaintiff] that they were scared and did not want to testify."  (*Id.*)  On the morning of the hearing, Plaintiff sent an email withdrawing her complaint.  (*Id.*)  Before Plaintiff withdrew her complaint, her online performance evaluation in the DOE Tenure Notification System for the 2021–22 school year showed a Satisfactory rating.  (*Id.*)  However, later that day, Defendant Favuzza changed Plaintiff's annual rating for that school year to Unsatisfactory.  (*Id.*)

Plaintiff received the Unsatisfactory rating for the 2021–22 school year on June 22, 2022. (*Id.*)  On June 29, 2022, Plaintiff submitted a request to appeal the rating.  (*Id.* at ECF 12.)  An appeal hearing was held on March 28, 2024.  (*Id.*)  On May 28, 2024, Plaintiff received a letter stating that her appeal was denied and the Unsatisfactory rating was sustained.  (*Id.*)

## II.    **2022–23 School Year**

During the 2022–23 school year, Plaintiff received multiple letters from Defendant Favuzza stating that Plaintiff's performance was less than satisfactory, as well as several letters to file, all of which were purportedly based on untrue allegations.  (*Id.* at ECF 12–14.)  Plaintiff

---

[3] The Court assumes that the complaint Plaintiff submitted on January 25, 2022 to the Special Commissioner of Investigations, (*see* Am. Compl., Dkt. 17, at ECF 9), was the subject of the scheduled Special Complaint Hearing, since Plaintiff does not state that she submitted a separate complaint to the Office of Labor Relations, (*see generally id.*).

continued to email groups of officials, including Superintendent Bove and Deputy Superintendent Melchiorre, regarding Defendant Favuzza's conduct towards her. (*Id.*)

On June 15, 2023, Plaintiff received an Unsatisfactory rating for the 2022–23 school year. (*Id.* at ECF 14.) She appealed this rating, and the hearing for the appeal was held on November 26, 2024. (*Id.*) The outcome of this appeal had not yet been determined by the time Plaintiff initiated this action or by the time the parties briefed the instant motion to dismiss. (*Id.*; Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem."), Dkt. 24-1, at 9.)

## III.    2023–24 and 2024–25 School Years

On November 21, 2023, Defendant Favuzza summoned Plaintiff for a disciplinary conference. (Am. Compl., Dkt. 17, at ECF 15.) On November 28, 2023, Plaintiff received a letter to file from Defendant Favuzza about Plaintiff's alleged unprofessional behavior. (*Id.*) Plaintiff emailed Defendant Favuzza a rebuttal letter on April 5, 2024, which was placed in her personnel file. (*Id.*)

In parallel, on September 27, 2023, "CSA[4] filed a special complaint grievance on [Plaintiff's] behalf regarding harassment and intimidation." (*Id.*) On November 30, 2023, CSA "filed a request for an anti-retaliation conference" on Plaintiff's behalf. (*Id.*) A hearing for the September 2023 special complaint was held on January 12, 2024. (*Id.*) On February 29, 2024, CSA "submitted a request for a Step 2 Special Complaint of Harassment and Intimidation conference" relating to the September 2023 special complaint. (*Id.*) On March 8, 2024, "CSA

---

[4] The Court presumes that "CSA" refers to the Council of School Supervisors and Administrators, which is "the collective bargaining unit" for certain employees of New York City public schools. *See Who We Are*, Council of Sch. Supervisors & Adm'rs, https://csa-nyc.org/about/what-is-csa/ [perma.cc/2M4V-QZ2Q].

submitted a Demand to Arbitrate on [Plaintiff's] behalf to the American Arbitration Association." (*Id.*)

## IV.    Effects of Defendants' Disciplinary Actions

Plaintiff alleges that Defendants' disciplinary actions have had a range of negative consequences for her.  Generally, she states that her Unsatisfactory ratings rendered her ineligible to "progress on salary step[s], . . . renew a temporary license, [or to be considered] for career advancement, transfers, substitute and per session assignments[,] and summer school positions." (*Id.* at ECF 16.)

Specifically, Plaintiff claims that she withdrew her application to the "Assistant Principal Leadership Institute" in 2022 because the adverse letters in her file rendered her no longer qualified, (*id.* at ECF 10); she was unable to supervise the "Summer Rising" program in 2022 due to her adverse letters and Unsatisfactory rating, (*id.* at ECF 11); she was unable to apply for "administrator per session postings" that were eligible for overtime in January 2023, September 2023, and November 2024 due to her Unsatisfactory ratings, (*id.* at ECF 13, 15–16); and she was unable to apply for a summer school program in 2025 because the selection criteria required a rating of at least Satisfactory for the 2022–23 school year, (*id.* at ECF 16).

Plaintiff also alleges that she was not hired for job positions to which she applied.  For example, she states that she applied for an "Educational Administrator" position in January 2025. (*Id.*)  The job requirements included "[f]ive years of successful educational leadership in public school with managerial/supervisory, administrative, and experience at the central, regional or district office level."  (*Id.*)  She does not specify whether any action was taken on that specific application.  (*See generally id.*)  However, she does allege that she reviewed open administrator position postings in February 2025 and saw that two positions that she had previously applied for

were re-posted without Plaintiff having had the opportunity to interview, and that Plaintiff "was not offered these positions," despite being "more than qualified." (*Id.* at ECF 16.)

Finally, Plaintiff claims that she had a $1,250 performance incentive for the 2021–22 school year revoked because of her 2021–22 Unsatisfactory rating, (*id.* at ECF 14), and that she was denied a performance incentive for the 2022–23 school year because of her 2022–23 Unsatisfactory rating, (*id.* at ECF 16).

## PROCEDURAL HISTORY

On September 1, 2023, Plaintiff filed a charge with the New York State Division of Human Rights (the "SDHR"), which accepted the charge on behalf of the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* at ECF 6; *see also* Pl.'s Mem. Opp'n Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. 24-4, at 5.) On November 24, 2023, Plaintiff's SDHR charge was dismissed on the grounds of administrative convenience because Plaintiff sought to pursue her remedies in federal court.[5] (SDHR Determination & Order of Dismissal for Admin. Convenience, Dkt. 26, at ECF 2–3.) On May 30, 2024, Plaintiff's EEOC charge was dismissed for the same reason. (Am. Compl., Dkt. 17, at ECF 17.) The EEOC issued Plaintiff a Right to Sue Letter, which allowed her to file a lawsuit on the charge within 90 days. (*Id.*) Plaintiff timely filed this action on August 23, 2024. (Compl., Dkt. 1.)

On December 13, 2024, Defendants requested a pre-motion conference ("PMC") in advance of their anticipated motion to dismiss the complaint. (Defs.' PMC Request, Dkt. 12.) On

---

[5] A person alleging violations of the NYSHRL or NYCHRL may choose either to file a claim with a local commission of human rights or to file a lawsuit, but may not do both. *See* N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(b); *accord York v. Ass'n of Bar of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002). However, a person whose case has been dismissed by the local commission can still bring a lawsuit if the dismissal was because of administrative convenience or because the election of an administrative remedy had been annulled. N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(b); *York*, 286 F.3d at 127 n.2.

December 16, 2024, Defendants filed an amended PMC request, which the Court granted after ordering Defendants to properly serve Plaintiff and after Plaintiff responded to the PMC request. (Defs.' Am. PMC Request, Dkt. 13; 12/17/2024 Dkt. Order; Pl.'s Opp'n to Defs.' Am. PMC Request, Dkt. 15; 12/27/2024 Dkt. Order.)   The Court held the PMC on January 30, 2025. (1/30/2025 Min. Entry.)

On February 28, 2025, Plaintiff submitted an Amended Complaint.   (Am. Compl., Dkt. 17.)   On April 16, 2025, Defendants served Plaintiff with their Motion to Dismiss the Amended Complaint.   (*See* Defs.' Letter, Dkt. 18.)   Plaintiff served her Memorandum in Opposition on May 19, 2025.  (*See* Pl.'s Opp'n, Dkts. 19 & 24-4.[6])  Defendants filed their Reply, along with both sides' submissions, on June 13, 2025.  (*See* Defs.' Mot. to Dismiss, Dkt. 24; Defs.' Mem., Dkt. 24-1; Pl.'s Opp'n, Dkt. 24-4; Defs.' Reply Supp. Mot. to Dismiss ("Defs.' Reply"), Dkt. 24-5.)  On June 10 and November 13, 2025, Plaintiff submitted letters informing the Court of Defendants' alleged "continuation of harassing and retaliatory acts against [her.]"  (Pl.'s 6/10/2025 Letter, Dkt. 23; Pl.'s 11/13/2025 Letter, Dkt. 25.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

---

[6] Though Defendants filed both sides' submissions, including Plaintiff's opposition, on June 13, 2025, (*see* 1/30/2025 Min. Entry; Pl.'s Opp'n, Dkt. 24-4), Plaintiff also filed her opposition on the day she served it on Defendants, May 19, 2025, (Pl.'s Opp'n, Dkt. 19).  The two opposition memoranda, Dkts. 19 and 24-4, are identical, and the Court cites to Dkt. 24-4 herein.

same at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting same). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

In addressing the sufficiency of a complaint, courts are required to accept the complaint's well-pleaded factual allegations as true.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678–79; *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)), *aff'd*, 569 U.S. 108 (2013).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, so the Court reads a plaintiff's *pro se* complaint liberally and interprets it to raise the strongest arguments and claims it suggests.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) ("We have noted our obligation to construe *pro se* complaints liberally . . . . In reviewing the sufficiency of a *pro se* complaint . . . , we are constrained to conduct our examination with special solicitude, interpreting the complaint to raise the strongest claims that it suggests." (cleaned up)); *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) ("This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))). Additionally, "[o]n a motion to dismiss, the Court may consider allegations that are contained in a

9

*pro se* plaintiff's opposition papers" in addition to the allegations in the complaint. *Kauffman v. New York Presbyterian Hosp.*, 762 F. Supp. 3d 309, 314 n.5 (S.D.N.Y. 2025) (citing *Burgess v. Goord*, No. 98-CV-2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) (collecting cases)).

## DISCUSSION

Plaintiff alleges violations of the FMLA, NYSHRL, and NYCHRL.[7]  (Am. Compl., Dkt. 17, at ECF 4.)  She states that she was discriminated against based on disability and retaliated against for taking FMLA leave.[8]  (*Id.* at ECF 16.)

Defendants move to dismiss the Amended Complaint on multiple grounds.  With respect to Plaintiff's FMLA retaliation claim, Defendants argue that: (1) Plaintiff "does not plausibly allege any adverse actions as a result of requesting or taking FMLA leave"; (2) "Plaintiff does not allege facts . . . that even suggest that Plaintiff taking FMLA leave was a motivating factor for any of the alleged adverse employment action[s]"; and (3) "Plaintiff's claims for individual liability against [Defendant] Favuzza must be dismissed because [she] is not an 'employer' under the FMLA." (Defs.' Mem., Dkt. 24-1, at 1.)   With respect to Plaintiff's NYSHRL and NYCHRL claims, Defendants argue that: (1) Plaintiff has failed to sufficiently allege (a) retaliatory intent for her retaliation claims, and (b) a basis for imposing individual liability on Defendant Favuzza; and

---

[7] Plaintiff's original complaint alleged violations of the Americans with Disabilities Act ("ADA"). (Compl., Dkt. 1, at ECF 3.)  However, Plaintiff's Amended Complaint does not include an ADA claim.  (*See* Am. Compl., Dkt. 17, at ECF 3.)

[8] Plaintiff states, "I believe I have been and continue to be retaliated against for disability discrimination and after taking FMLA leave."  (Am. Compl., Dkt. 17, at ECF 16.)  The Court assumes that Plaintiff does not mean that she was retaliated against for herself engaging in disability discrimination; rather, construing Plaintiff's pleading to raise the strongest claims it suggests, the Court assumes that Plaintiff is alleging (1) that she was discriminated against based on her disability, and (2) that she was retaliated against for taking FMLA leave.

(2) these claims "are almost entirely barred because [Plaintiff] did not file a notice of claim [under New York Education Law § 3813(1)] until August 9, 2024."[9]  (*Id.*)

## I.  FMLA Claim

The Court first addresses Defendants' argument that Plaintiff has failed to state a retaliation claim under the FMLA.[10]  (Defs.' Mem., Dkt. 24-1, at 1, 14–17; Defs.' Reply, Dkt. 24-5, at 3–4.)

The FMLA entitles eligible employees to take up to 12 weeks of unpaid leave during any 12-month period for certain qualifying reasons, including "[i]n order to care for the spouse, or a son, daughter, or parent[] of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).  The FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the exercise" of "any right" provided in the FMLA.  29 U.S.C. § 2615(a)(1); *see also Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 167 (2d Cir. 2017) (holding that retaliation claims based on employee taking FMLA leave are actionable under 29 U.S.C. § 2615(a)(1)).

---

[9] Defendants do not provide any argument (aside from conclusory/perfunctory statements) that Plaintiff failed to state a claim of discrimination under the NYSHRL and NYCHRL. Nonetheless, as discussed below, the Court concludes that her NYSHRL discrimination claim must be dismissed, but her NYCHRL discrimination claim may proceed.

[10] As the Court construes it, Plaintiff's Amended Complaint alleges a willful violation of the FMLA, which is subject to a three-year statute of limitations.  29 U.S.C. § 2617(c)(2); *see Offor v. Mercy Med. Cntr.*, 676 F. App'x 51, 54 n.2 (2d Cir. 2017) (summary order) ("[R]etaliating against an employee for exercising FMLA rights is almost by definition a 'willful' violation."). Plaintiff initiated this action on August 23, 2024, (*see* Compl., Dkt. 1), which is less than three years after Plaintiff returned from FMLA leave in January 2022, (*see* Am. Compl., Dkt. 17, at ECF 8).  Therefore, her FMLA claim is timely pled.  Furthermore, as Defendants have not argued that Plaintiff failed to allege willfulness and that her FMLA claim is therefore untimely, Defendants have waived that argument.  *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) ("Generally, '[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove.'" (alteration in original) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008))).

"Courts in this circuit analyze FMLA retaliation claims, at the evidentiary stage, under the *McDonnell Douglas* burden-shifting framework."[11]   *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *18 (E.D.N.Y. June 19, 2020) (citing *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016)).   In order to make out a prima facie case at the first step of that framework, a plaintiff must establish that: (1) they "exercised rights protected under the FMLA," (2) they were "qualified for [their] position," (3) they "suffered an adverse employment action," and (4) "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."   *Graziadio*, 817 F.3d at 429 (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012)).   "If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual."   *Id.*   The plaintiff can show that the defendant's proffered explanation is pretextual "'by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the [defendant]'s proffered' reason, or by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a 'motivating factor' in the adverse employment action."   *Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020) (summary order) (citations omitted) (first quoting *Graziadio*, 817 F.3d at 430; and then quoting *Woods*, 864 F.3d at 168–69).

---

[11] In *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016), the Second Circuit left open the question of whether, in FMLA retaliation cases, a test more favorable to claimants should apply than the *McDonnell Douglas* test described here.   *See Graziadio*, 817 F.3d at 429 n.7 (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1993) (Title VII)). The Second Circuit found it unnecessary to decide "whether an easier test should govern" because the plaintiff in that case met the stricter *McDonnell Douglas* test.   *Id.*   This Court takes the same approach.

"[A] plaintiff does not need to plead specific facts establishing a prima facie case of FMLA retaliation in order to survive a motion to dismiss." *Robles*, 2020 WL 3403191, at *18 (cleaned up) (quoting *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 448 (S.D.N.Y. 2017)). Nonetheless, to determine whether a plaintiff has stated a plausible claim for relief, the Court may look to the elements of the prima facie case. *Id.*

Here, Defendants do not dispute that Plaintiff exercised rights protected by the FMLA and was qualified for her position. (*See generally* Defs.' Mem., Dkt. 24-1, at 1, 14–15.) Therefore, the Court turns directly to the third and fourth elements of the prima facie case: adverse action and retaliatory intent.

### A.    Plaintiff Sufficiently Alleges Adverse Action

Defendants assert that Plaintiff "fails to state a claim of retaliation under the FMLA because she does not plausibly allege any adverse actions as a result of requesting or taking FMLA leave." (Defs.' Mem., Dkt. 24-1, at 1.) However, after making this assertion in their preliminary statement, Defendants do not return to it in their argument. (*See generally id.* at 12–18.) "Where a party refers to an issue in only a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived—or, more precisely, *forfeited*." *O'Sullivan v. PHH Mortg. Corp.*, No. 2:22-CV-4420 (NJC) (ARL), 2025 WL 1835926, at *16 (E.D.N.Y. July 3, 2025) (cleaned up) (quoting *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023)). Thus, Defendants have forfeited this argument.

In any event, Plaintiff has adequately alleged adverse actions. An adverse action in the retaliation context is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising [their] legal rights." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). Courts in this circuit have routinely found that employer actions analogous to those alleged by Plaintiff, such as negative performance evaluations and disciplinary

13

letters, constitute adverse actions in the FMLA retaliation context. *See Ziccarelli*, 2021 WL 797668, at *7 (S.D.N.Y. Feb. 27, 2021) (collecting cases). Since Plaintiff describes "a barrage of disciplinary letters and poor performance ratings" after she returned from FMLA leave, (Am. Compl., Dkt. 17, at ECF 9), the Amended Complaint sufficiently alleges that Plaintiff suffered adverse actions.

### B.      Plaintiff's Allegations Raise an Inference of Retaliatory Animus

Defendants claim that the "alleged adverse acts . . . cannot establish retaliatory animus." (Defs.' Mem., Dkt. 24-1, at 15.) Defendants make three arguments in support of that claim. First, Defendants argue that "Plaintiff solely relies on temporal proximity to try [to] establish retaliatory animus," and "any alleged adverse acts that occurred more than two or three months after Plaintiff took FMLA leave [are] too temporally remote to establish causation." (*Id.*) Second, Defendants argue that Plaintiff's allegations of multiple adverse employment actions *within* the three months following her return from FMLA leave "cannot establish retaliatory animus because Plaintiff admits that she received a disciplinary letter for insubordination" before she applied for or took FMLA leave, which they argue defeats any inference of retaliation based on temporal proximity. (*Id.*) Third, Defendants argue that Plaintiff has "not allege[d] any facts that even suggest that [Defendant] Favuzza knew Plaintiff applied for, was granted, or took . . . FMLA leave," and "[a]t best, Plaintiff merely speculates that [Defendant] Favuzza retaliated against her." (*Id.* at 15–16.)

As to their first argument, Defendants miss the mark by arguing that adverse acts that occurred more than two or three months after Plaintiff's FMLA leave are too remote to establish retaliatory animus. Defendants are correct that some courts within the Second Circuit have found the passage of four months between a plaintiff's FMLA leave and the alleged adverse employment action too attenuated to establish causation when a plaintiff is relying on temporal proximity alone. *See Davis v. Power of Auth.*, No. 19-CV-0792 (KMK), 2022 WL 309200, at *19 (S.D.N.Y.

Feb. 2, 2022) (collecting cases). Here, though, Plaintiff is *not* solely relying on temporal proximity to establish causation on her FMLA retaliation claim, as she alleges "escalating negative actions toward her combined with . . . allegedly false explanations" for the disciplinary letters and summonses. *Behringer v. Lavelle Sch. for the Blind*, No. 08-CV-4899 (JGK), 2010 WL 5158644, at *15 (S.D.N.Y. Dec. 17, 2010); (*see* Am. Compl., Dkt. 17, at ECF 8–16). These factors strengthen the inference of retaliation in her allegations. *See Behringer*, 2010 WL 5158644, at *15.

Still, looking solely at the timing of Plaintiff's allegations, she received two disciplinary conference summonses the morning she returned from FMLA leave, as well as two disciplinary letters less than one week later. (Am. Compl., Dkt. 17, at ECF 8–9.) In the months that followed, she received several more disciplinary letters and a warning that she was in danger of receiving an Unsatisfactory rating for the school year. (*Id.* at ECF 9–10.) These disciplinary letters and the warning are sufficiently close in time to allow an inference of causation. *See Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (collecting cases to show that courts in this circuit consider temporal proximity of about two months or less to be sufficient to establish causal inference); *De Figueroa v. City of New York*, 403 F. Supp. 3d 133, 158 (E.D.N.Y. 2019) (finding temporal proximity of less than one week "very close" and sufficient to establish retaliatory intent at the motion-to-dismiss stage (citing *Lambert*, 304 F. Supp. 3d at 423)).

Second, the Court disagrees with Defendants' argument that Plaintiff's pre-FMLA disciplinary history negates the inference of retaliatory animus. While Plaintiff admits to receiving one disciplinary letter for insubordination in October 2021, before she applied for and then took FMLA leave, (Am. Compl., Dkt. 17, at ECF 8; Defs.' Mem., Dkt. 24-1, at 15), Plaintiff was not subjected to any additional adverse employment actions between that letter and when she applied for FMLA leave, (Am. Compl., Dkt. 17, at ECF 8). And, prior to the October 2021 letter, Plaintiff

had *never* received a disciplinary letter.  (*Id.*)  This almost negligible history of pre-FMLA-leave disciplinary actions distinguishes Plaintiff's allegations from the cases on which Defendants rely.  (*See* Defs.' Mem., Dkt. 24-1, at 15–16 (first citing *Woolf v. Strada*, 792 F. App'x 143, 146 (2d Cir. 2020) (summary order); and then citing *Elliot-Leach v. N.Y.C. Dep't of Educ.*, 710 F. App'x 449, 452 (2d Cir. 2017) (summary order)).)

In *Woolf*, the Second Circuit affirmed a district court's grant of summary judgment because "'the adverse employment actions were both part, and the ultimate product, of an extensive period of progressive discipline which began' before [the plaintiff] engaged in any protected activity." 792 F. App'x at 146 (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2001)). Here, in contrast, there was *no* period of progressive discipline before Plaintiff engaged in protected activity—at most, she had received a single disciplinary letter over the course of six years before applying for FMLA leave.  (Am. Compl., Dkt. 17, at ECF 8.)  And in *Elliot-Leach*, unlike here, the plaintiff's "disciplinary issues [predating her leave] were well-documented." *Elliot-Leach*, 201 F. Supp. 3d 238, 244–45 (E.D.N.Y. 2016), *aff'd*, 710 F. App'x 449. Furthermore, in *Elliot-Leach*, the temporal gap between the plaintiff's FMLA leave and the alleged adverse action was eight months, *Elliot-Leach*, 710 F. App'x at 452, in stark contrast to Plaintiff's allegations here that she received two disciplinary summonses the very morning she returned from FMLA leave, (Am. Compl., Dkt. 17, at ECF 8–9).  These cases are materially distinguishable, and Plaintiff's minimal disciplinary history prior to her FMLA leave does not defeat the inference that her post-leave discipline was retaliatory.

Third, the Court disagrees with Defendants' argument that Plaintiff has not "sufficiently alleged [retaliatory] animus" because she does not state "facts that even suggest that [Defendant] Favuzza knew Plaintiff applied for, was granted, or took . . . FMLA leave."  (Defs.' Mem.,

Dkt. 24-1, at 15–16.)  Plaintiff clearly alleges, and Defendants do not dispute, that Defendant Favuzza was Plaintiff's "immediate supervisor" at all relevant times.  (Am. Compl., Dkt. 17, at ECF 8.)  Plaintiff alleges that, following her "return from . . . FMLA leave, [Defendant] Favuzza completely changed how she treated" Plaintiff.  (*Id.* at ECF 9.)  Implicit in these claims is that Plaintiff alleges that Defendant Favuzza was aware of Plaintiff's FMLA leave.  Drawing all inferences in Plaintiff's favor, Plaintiff has stated sufficient facts to suggest that Defendant Favuzza knew that Plaintiff took FMLA leave.

### C.    Plaintiff Sufficiently Alleges That Defendant Favuzza Was Her Employer Under the FMLA

Finally, the Court disagrees with Defendants' argument that Plaintiff's FMLA claims against Defendant Favuzza must be dismissed because Plaintiff purportedly failed to plead that Defendant Favuzza acted as an "employer" under the FMLA.  (Defs.' Mem., Dkt. 24-1, at 17.) Under the FMLA, employer status is determined by the "economic reality test," which is "a factual inquiry that does not bear on the sufficiency of the pleadings."  *Ziccarelli*, 247 F. Supp. 3d at 446 (first citing *Graziadio*, 817 F.3d at 422; and then quoting *Smith v. Westchester County*, 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011)).  "Thus, to survive a motion to dismiss, Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, [she] must simply 'plead that the proposed [i]ndividual [d]efendants had substantial control over the aspects of employment alleged to have been violated.'"  *Id.* (quoting *Smith*, 769 F. Supp. 2d at 475–76).  As Plaintiff has alleged that Defendant Favuzza was her "immediate supervisor" and had powers that included the ability to issue disciplinary letters, disciplinary summonses, and Satisfactory/Unsatisfactory ratings, (*see* Am. Compl., Dkt. 17, at ECF 8–15), Plaintiff has met that standard.

\* \* \*

In sum, Plaintiff has alleged sufficient facts to state a claim for retaliation under the FMLA. The Court therefore denies Defendants' motion to dismiss that claim.

## II.    NYSHRL and NYCHRL Claims

Turning to Plaintiff's state and municipal law claims, Defendants argue that Plaintiff's claims under the NYSHRL and NYCHRL should be dismissed on the following grounds: (1) failure to provide a notice of claim (as to Defendant DOE only); (2) failure to state a claim of retaliation; and (3) failure to state claims that establish Defendant Favuzza's individual liability. (Defs.' Mem., Dkt. 24-1, at 1, 12–18.)  Defendants do not provide any argument, aside from conclusory/perfunctory statements, that Plaintiff failed to state a claim of discrimination under the NYSHRL and NYCHRL.  (*See generally id.*)  Nonetheless, the Court addresses Plaintiff's discrimination claims in addition to her retaliation claims.

### A.    Plaintiff Provided Notice of Her Claims Under New York Education Law Section 3813(1)

Defendants assert that Plaintiff's NYSHRL and NYCHRL claims against the DOE must be dismissed because Plaintiff did not timely file a notice of claim under New York Education Law § 3813(1) ("Section 3813(1)").[12]  (Defs.' Mem., Dkt. 24-1, at 12–14.)  Section 3813(1) states that no action shall proceed against a school district "unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three

---

[12] As Defendants concede, Section 3813(1)'s notice-of-claim requirement does not apply to Plaintiff's claims against Defendant Favuzza.  (*See* Defs.' Reply, Dkt. 24-5, at 1); *see also Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 235 (E.D.N.Y. 2015) (holding that Section 3813(1) does not apply to claims against school administrators, such as principals or assistant principals, who "do[] not hold district-wide office" (citing *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 312 (E.D.N.Y. 2014))).

months after the accrual of such claim." N.Y. Educ. Law § 3813(1). "This notice requirement applies to all state and municipal claims," including claims under the NYSHRL and NYCHRL. *Gehlaut v. N.Y.C. Dep't of Educ.*, No. 22-CV-7862 (AMD) (LB), 2024 WL 456822, at *7 (E.D.N.Y. Feb. 6, 2024) (citing *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011)), *aff'd*, No. 24-1741, 2025 WL 2586770 (2d Cir. Sep. 8, 2025). The notice of claim requirement "is a condition precedent to file an action in New York against [a] school board" such as the DOE. *Id.* (citing same); *see also Jacobs v. N.Y.C. Dep't of Educ.*, No. 11-CV-5058 (MKB), 2013 WL 12425672, at *5–7 (E.D.N.Y. Feb. 1, 2013) (dismissing NYSHRL and NYCHRL discrimination claims against DOE for failure to file notice of claim under Section 3813(1)). "[T]he failure to serve the proper public body with a notice of claim 'is a fatal defect mandating dismissal of [the] action.'" *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 411 (S.D.N.Y. 2013) (quoting *Parochial Bus Sys., Inc. v. Bd. of Educ.*, 470 N.Y.S.2d 564, 568 (1983)), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (summary order).

### 1.    Plaintiff Filed a Notice of Claim in August 2024

Plaintiff's Amended Complaint states that she filed a "notice of claim" against the DOE on August 9, 2024. (Am. Compl., Dkt. 17, at ECF 16.) Defendants do not contest, and thereby concede, that Plaintiff's notice satisfies Section 3813(1) for claims that accrued in the three months preceding August 9, 2024. (*See* Defs.' Mem., Dkt. 24-1, at 13; Defs.' Reply, Dkt. 24-5, at 3.) However, Defendants argue that the Court cannot consider any of Plaintiff's state or municipal law claims against the DOE that are predicated on acts that occurred outside of that three-month period. (*See* Defs.' Mem., Dkt. 24-1, at 13–14; Defs.' Reply, Dkt. 24-5, at 3.)

Section 3813(1) does not require a plaintiff to provide a notice of claim within three months of each act that will eventually be described in their complaint. Rather, it requires plaintiffs to provide a notice of claim "within three months after the accrual of [the] claim." N.Y. Educ. Law

§ 3813(1).  Generally, "[t]he accrual of a claim, as that term is employed in [Section] 3813(1), occurs when damages have matured and become certain and ascertainable." *Williams v. N.Y.C. Dep't of Educ.*, No. 19-CV-1353 (CM), 2019 WL 4393546, at *18 (S.D.N.Y. Aug. 28, 2019) (internal quotation marks omitted).  "That determination, in turn, requires courts to 'look at the crux of the challenge being asserted.'" *Id.* (quoting *Bd. of Educ. v. N.Y. State Pub. Emp. Relations Bd.*, 681 N.Y.S.2d 391, 394 (3d Dep't 1998)); *cf. Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 87 (2d Cir. 2024) (explaining that "[w]ithin each body of law, there are different accrual rules depending on the nature of the cause of action").

Here, Plaintiff's claims are based primarily on what she describes as "a barrage of adverse disciplinary letters" and "poor evaluations" she received after returning from FMLA leave.  (Pl.'s Opp'n, Dkt. 24-4, at 1.)  "[N]egative performance ratings" and "letters to file . . . are discrete acts" that could, on their own, give rise to cognizable discrimination or retaliation claims.  *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).  Those claims would "accrue" under the NYSHRL and NYCHRL on the dates each act occurred.  *See Williams*, 2019 WL 4393546, at *19–20 (collecting cases for propositions that "[d]iscrimination claims under the NYSHRL and NYCHRL accrue under Section 3813 when an employer takes an adverse action that results in readily ascertainable damages" and that "[r]etaliation claims under the NYSHRL and NYCHRL accrue on the date on which the retaliatory act is taken").  To the extent Plaintiff brings such discrete claims, Defendants are correct that Plaintiff's August 9, 2024 notice of claim only covers claims based on events that occurred in the preceding three months.

2.   Plaintiff's September 2023 SDHR/EEOC Charge Also Constitutes a
Notice of Claim

However, Plaintiff argues that in addition to her formal notice of claim, she complied with

Section 3813(1) by filing a timely SDHR/EEOC charge on September 1, 2023. (Pl.'s Opp'n,

Dkt. 24-4, at 5.) Although courts have disagreed over whether Section 3813(1) requires the formal

"notice of claim" described in New York General Municipal Law § 50-e, the Court holds that it

does not. *See Berrie v. Bd. of Educ.*, No. 14-CV-6416 (CS), 2017 WL 2374363, at *8

(S.D.N.Y. May 31, 2017) (describing history of disagreement in the Second Circuit and New York

state courts and concluding formal notice of claim is not required), *aff'd*, 750 F. App'x 41

(2d Cir. 2018) (summary order); *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467,

481–82 (S.D.N.Y. 2019) (citing *Berrie*, *inter alia*, and concluding same); *Hatcher v. N.Y.C. Dep't

of Educ.*, No. 23-CV-3510 (NRM) (LB), 2024 WL 4333643, at *3 (E.D.N.Y. Sep. 27, 2024)

(similar). Therefore, "an EEOC or SDHR complaint may satisfy the notice of claim requirement,

[but] Plaintiff must still plausibly allege that the administrative complaint met Section 3813's

requirements." *Hatcher*, 2024 WL 4333643, at *3 (cleaned up). In other words, Plaintiff must

plead that the administrative complaint was presented to the DOE within three months of when

her claims accrued, and it must have been sufficiently detailed to allow the DOE to investigate her

claims. *See* N.Y. Educ. Law § 3813(1); *Berrie*, 2017 WL 2374363, at *8.

Defendants do not argue that Plaintiff's SDHR/EEOC charge was insufficiently detailed to

allow the DOE to investigate the claims, (*see generally* Defs.' Reply, Dkt. 24-5, at 2–3); instead,

Defendants argue that Plaintiff failed to allege that the charge was served on the DOE within three

months of her claims' accrual, (*id.* at 2). However, the Court is satisfied by Plaintiff's statement

that the charge was "presented to the [DOE]" and the DOE "submitted a response . . . dated

October 20, 2023." (Pl.'s Opp'n, Dkt. 24-4, at 5.) The Court therefore finds that Plaintiff provided

adequate notice for any of her claims based on discrete acts of discrimination or retaliation that occurred in the three months before she filed her SDHR/EEOC charge. Combined with her formal notice of claim, that covers discrete acts from June 3–September 1, 2023 (the 90-day period preceding Plaintiff's SDHR/EEOC charge), and from May 11–August 9, 2024 (the 90-day period preceding her formal notice of claim).

### 3.    Plaintiff Alleges Continuing Violations

Most importantly, some of Plaintiff's claims fall within the continuing violation doctrine, which affects when those claims accrue. The continuing violation doctrine recognizes that certain claims, like hostile work environment claims, are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). Such a claim "continues to accrue, or reaccrues, each time the defendant engages in an act that is 'part of the ongoing, discriminatory practice.'" *Olivieri*, 112 F.4th at 88 (quoting *King v. Aramark Servs., Inc.*, 96 F.4th 546, 561 (2d Cir. 2024)) (specifically regarding hostile work environment claims under Title VII). Put another way, a claim for a continuing violation "*first* accrues when the plaintiff has an actionable claim; but because such a claim is a single and indivisible claim arising from numerous specific acts undertaken in a continuing course, the claim reaccrues—it is essentially reborn—with each successive act that is part of that continuing course." *Id.* at 85. Therefore, as long as at least one act contributing to the continuing violation occurs within the statute of limitations or notice period, the entire claim is timely, and the defendant can be held liable for "the entire time period" of the violation. *Id.* at 88 (quoting *King*, 96 F.4th at 560); *see also Williams*, 2019 WL 4393546, at *18 (explaining that the continuing violation doctrine modifies when claims "accrue" for purposes of Section 3813(1)'s notice of claim requirement).

A continuing violation may be found under Title VII if "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *King*, 96 F.4th at 559 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). Hostile work environment claims are a "common type of claim subject to the continuing violation doctrine" because "unlike discrete acts, '[t]heir very nature involves repeated conduct.'" *Olivieri*, 112 F.4th at 88 (alteration in original) (quoting *Morgan*, 536 U.S. at 115). The NYSHRL's continuing violation doctrine previously "mirror[ed] that of Title VII," while the NYCHRL's doctrine was "more generous." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (citing *Sotomayor*, 862 F. Supp. 2d at 250). The New York State Legislature amended the NYSHRL in 2019, "the effect of which [was] to render the standard for claims closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also* N.Y. Exec. Law § 300 (requiring that the NYSHRL be construed "liberally for the accomplishment of [its] remedial purposes," and that "[e]xceptions to and exemptions from [its] provisions . . . be construed narrowly in order to maximize deterrence of discriminatory conduct").

Regardless, even under the stricter Title VII standard, the Court would find that Plaintiff has sufficiently alleged a continuing violation. Construing the record in the light most favorable to Plaintiff, she has adequately pled a continuing violation akin to a hostile work environment claim.[13] She describes specific, similar acts—disciplinary letters and negative performance

---

[13] The Court notes that the NYCHRL "does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment, which is a term of art borrowed from the more restrictive Title VII jurisprudence." *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 287 n.6 (S.D.N.Y. 2024) (quoting *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452 n.3 (S.D.N.Y. 2024)). And, as discussed above, the NYSHRL's standard for claims is now "closer to that of the NYCHRL" than to that of Title VII. *Id.* at 274.

evaluations—and she alleges these acts were related to each other as "part of a clear, targeted campaign" that began after she returned from FMLA leave in January 2022.  (Pl.'s Opp'n, Dkt. 24-4, at 11; *see also id.* at 1–2.)  Although the specific acts she alleges might be "discrete acts" on their own, they could plausibly constitute an ongoing practice of harassment when taken together.  *See King*, 96 F.4th at 561 (hostile work environment claims are "formed and shaped by an assemblage of discriminatory acts—*including* acts that might *also* support a discrete-act discrimination claim if timely filed").

Plaintiff has also alleged at least one act in furtherance of the continuing violation that was within the statutory period of Section 3813(1).  Namely, she alleges that she received an "Unsatisfactory" annual rating for the 2022–23 school year on June 15, 2023, (Am. Compl., Dkt. 17, at ECF 14), less than three months before she filed her SDHR/EEOC charge on September 1, 2023, (*id.* at ECF 6).  Therefore, Plaintiff has satisfied Section 3813(1)'s requirements for her continuing violation claim, and the Court will consider all acts that took place in furtherance of the continuing violation alleged, even if those acts happened outside the June 3–September 1, 2023 or May 11–August 9, 2024 windows.

This conclusion finds support in the Section 3813(1) case law regarding ongoing violations, even in cases that do not explicitly invoke the continuing violation doctrine, because it follows logically that the full extent of damages for ongoing discrimination or retaliation cannot be accurately assessed until the discrimination or retaliation ends.  *See, e.g., Hoger v. Thomann*, 592 N.Y.S.2d 887, 888–89 (3d Dep't 1993) (holding that, for purposes of Section 3813(1), the extent of damages in action for discrimination under NYSHRL could not be determined while discriminatory acts were ongoing—in that case, as long as plaintiff was employed by allegedly discriminatory supervisor); *Moore v. Middletown Enlarged City Sch. Dist.*, 871 N.Y.S.2d 211, 212

(2d Dep't 2008) (requiring plaintiff alleging retaliation to serve Section 3813(1) notice of claim "within three months of the *last* alleged retaliatory act" (emphasis added)); *Freud v. N.Y.C. Dep't of Educ.*, No. 21-CV-2291 (MKV), 2022 WL 889213, at *5 (S.D.N.Y. Mar. 25, 2022) (requiring plaintiff alleging NYSHRL and NYCHRL claims against the DOE to file a Section 3813(1) notice of claim within three months of the "*final* discriminatory act prior to the notice of claim" (emphasis added)), *aff'd*, No. 22-879, 2023 WL 3103588 (2d Cir. Apr. 27, 2023) (summary order).

**B.    Plaintiff's Discrimination Claims are Dismissed in Part**

Having concluded that Plaintiff's NYSHRL and NYCHRL claims against the DOE should not be dismissed for lack of notice of claim, the Court now considers whether these claims should be dismissed for failure to state a claim under Rule 12(b)(6).

1.    Plaintiff's NYSHRL Discrimination Claim is Dismissed

It is not clear from the Amended Complaint or the motion briefing whether Plaintiff intends to bring a claim for discrimination under the NYSHRL.  In her opposition to Defendants' motion to dismiss, Plaintiff states that she intends to "state[] . . . claims for retaliation *and discrimination*" under the FMLA, NYSHRL, and NYCHRL.  (Pl.'s Opp'n, Dkt. 24-4, at 1 (emphasis added).) However, neither Plaintiff nor Defendants submitted argument on whether Plaintiff stated a claim for discrimination under the NYSHRL.  (*See generally id.*; Defs.' Mem., Dkt. 24-1; Defs.' Reply, Dkt. 24-5.)

To the extent Plaintiff brings an NYSHRL discrimination claim, the Court dismisses it *sua sponte*.  The NYSHRL prohibits an employer from discriminating against an individual based on the "individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence."  N.Y. Exec. Law § 296(1)(a).  Plaintiff does not allege that she was discriminated against on the basis of

any characteristic protected by the NYSHRL.  (*See generally* Am. Compl., Dkt. 17.)  Although Plaintiff's SDHR/EEOC charge states that she experienced discrimination on the basis of disability due to "COVID/FMLA Leave," (Am. Compl., Dkt. 17, at ECF 22), having contracted COVID-19 does not, on its own, render an individual "disabled" for purposes of the NYSHRL.  *See Hayes v. Horizon Village, Inc.*, No. 24-CV-0882 (JLS) (LGF), 2025 WL 3647584, at *4 (W.D.N.Y. Sep. 26, 2025) (collecting cases showing that "neither having a COVID-19 viral infection nor being regarded as having COVID-19 is a cognizable disability under the . . . NYSHRL"), *R. & R. adopted*, No. 24-CV-0882 (JLS) (LGF), 2025 WL 3642274 (W.D.N.Y. Oct. 22, 2025); N.Y. Exec. Law § 292(21) ("The term 'disability' means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment . . . .").  Having taken leave under the FMLA also does not constitute a protected trait under the NYSHRL.  *See generally* N.Y. Exec. Law § 296(1)(a); *cf. Sotomayor*, 862 F. Supp. 2d at 262 (in retaliation context, taking FLMA leave is not a "protected activity" under the NYSHRL).  Plaintiff's NYSHRL discrimination claim is therefore dismissed for failure to state a claim upon which relief can be granted.

2.    Plaintiff's NYCHRL Discrimination Claim Based on Her Caregiver Status Is Sufficiently Alleged

Plaintiff similarly has not stated a claim for discrimination based on disability under the NYCHRL.  As with the NYSHRL, having contracted COVID-19 does not, on its own, render an individual "disabled" for purposes of the NYCHRL.  *See Acosta v. N.Y. Times Co.*, No. 25-CV-1119 (JPC), 2025 WL 3468042, at *4–6 (S.D.N.Y. Dec. 3, 2025) (comparing cases and concluding that while serious instances of COVID-19 may render individuals disabled within

the meaning of the NYCHRL, plaintiffs must plead facts to show that they were significantly or seriously impaired).

However, the NYCHRL also prohibits discrimination on the basis of "caregiver status." N.Y.C. Admin. Code § 8-107(1)(a).  Plaintiff has adequately alleged that she was a "caregiver" within the meaning of the NYCHRL because she describes taking leave to take care of her mother, who was dying from pancreatic cancer.  (*See* Am. Compl., Dkt. 17, at ECF 8–9); N.Y.C. Admin. Code § 8-102 (defining caregiver as person who provides "direct and ongoing care" for a minor child or care recipient; defining a care recipient to include, *inter alia*, a parent with a disability; and defining a disability to include, *inter alia*, an "impairment of any system of the body," including the digestive and endocrine systems); *cf. Marullo v. Ellerbe Becket, Inc.*, No. 95-CV-4561 (FB) (MDG), 2001 WL 282772, at *17 (E.D.N.Y. Mar. 16, 2001) (finding that plaintiff's prostate cancer qualified as a "disability" under NYCHRL); *Ronen v. RedRoute, Inc.*, 763 F. Supp. 3d 319, 332–33 (E.D.N.Y. 2025) (finding NYCHRL caregiver status sufficiently alleged where plaintiff stated he needed to take care of wife while she recovered from pregnancy complications and surgery).

"To state a discrimination claim under the NYCHRL . . . , 'a plaintiff must allege only that [they were] treated less well because of . . . discriminatory intent, *i.e.*, that the unequal treatment was based, at least in part, on a protected characteristic.'" *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 23-CV-1932 (JLR), 2025 WL 1795378, at *17 (S.D.N.Y. June 30, 2025) (cleaned up) (quoting *Lee*, 751 F. Supp. 3d at 275).  At this stage, Plaintiff has sufficiently alleged that she was treated less well because of her status as a caregiver.  Plaintiff alleges that immediately following her return from the leave she took to care for her dying mother, Defendant "Favuzza completely changed how she treated [Plaintiff], and [Plaintiff] received a barrage of disciplinary

letters and poor performance ratings." (Am. Compl., Dkt. 17, at ECF 8–9.) Admittedly, it is a close question whether Plaintiff has established that her treatment was caused—even in part—by her caregiver status. But given the "close temporal proximity" between Plaintiff's leave to care for her mother and the alleged discrimination, as well as the "comparatively relaxed pleading standards governing NYCHRL claims," the Court finds that Plaintiff's "caregiver-discrimination allegations . . . state a cause of action, if only just." *Pustilnik v. Battery Park City Auth.*, 147 N.Y.S.3d 357, 371 (Sup. Ct. 2021). Additionally, Defendants do not argue that Plaintiff has failed to allege sufficient facts to show that she was discriminated against based on her status as a caregiver. Indeed, they do not present any argument that Plaintiff's NYCHRL discrimination claim against the DOE should be dismissed, other than their notice-of-claim argument discussed above. (*See generally* Defs.' Mem., Dkt. 24-1; Defs.' Reply, Dkt. 24-5.) Plaintiff's NYCHRL discrimination claim based on caregiver status may therefore proceed.

### C.     Plaintiff's NYSHRL and NYCHRL Retaliation Claims Are Sufficiently Alleged

Both the NYSHRL and NYCHRL prohibit employers from retaliating against an employee for engaging in protected activity, which includes "oppos[ing] any practice forbidden" under each statute, as well as "fil[ing] a complaint, testif[ying,] or assist[ing] in any [related] proceeding." N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7). To make out a prima facie case of retaliation under the NYSHRL and NYCHRL, the plaintiff must demonstrate that, as a result of their protected activity, "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024)).

Defendants argue that Plaintiff has not alleged that she "engaged in any protected activity or that Defendants engaged in any conduct that would be reasonably likely to deter Plaintiff or

anyone else from engaging in protected activity." (Defs.' Mem., Dkt. 24-1, at 16–17.)  The Court disagrees.

First, Plaintiff has adequately alleged that she engaged in protected activity.  For example, Plaintiff claims that she began sending emails and submitting internal complaints about Defendants' allegedly discriminatory behavior as soon as January 14, 2022, continuing at least through the initiation of this lawsuit.[14]  (Am. Compl., Dkt. 17, at ECF 9–16); *see also Harper v. N.Y.C. Hous. Auth.*, 673 F. Supp. 2d 174, 182 (S.D.N.Y. 2009) (holding that "an employee may 'oppose' the employer's practice by informally complaining to management" and finding that employee who submitted an internal complaint about diminished duties had adequately alleged NYSHRL and NYCHRL retaliation claims (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276–77 (2009))).  Plaintiff also filed formal complaints on January 25, 2022, (Am. Compl., Dkt. 17, at ECF 9) (with New York City's Special Commissioner of Investigations), and September 1, 2023, (*id.* at ECF 6) (with SDHR and EEOC), which are clearly protected activity.  *See Naula v. N.Y.C. Dep't of Educ.*, No. 24-CV-0333 (NRM) (LB), 2025 WL 948100, at *5 (E.D.N.Y. Mar. 30, 2025) ("[T]here is no dispute that filing a formal charge of discrimination [with the SDHR] . . . is a protected activity." (citing *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000))); *Postell v. Fallsburg Lib.*, No. 20-CV-3991 (NSR), 2022 WL 1092857, at *10

---

[14] Although the Court has concluded that Plaintiff did not allege a plausible violation of the NYSHRL for discrimination, "a plaintiff in a retaliation case need not establish that the conduct [they] opposed was *in fact* a violation of the NYSHRL." *Swiderski v. Urb. Outfitters, Inc.*, No. 14-CV-6307 (JPO), 2017 WL 6502221, at *11 (S.D.N.Y. Dec. 18, 2017) (internal quotation marks omitted and alterations adopted) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  "Instead, '[t]he plaintiff must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Id.* (alteration in original) (quoting same); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001) (holding same in Title VII context).  At this early stage of the litigation, Plaintiff has so demonstrated.

(S.D.N.Y. Apr. 8, 2022) (complaining to EEOC is protected activity under NYSHRL); *Weber v. City of New York*, 973 F. Supp. 2d 227, 267 (E.D.N.Y. 2013) ("Plaintiff's filing of a complaint . . . with the [SDHR] was protected activity."); *Oshinsky v. N.Y.C. Hous. Auth.*, No. 98-CV-5467 (AGS), 1999 WL 553826, at *3 (S.D.N.Y. July 29, 1999) ("There is no question that plaintiff, in filing charges with [the SDHR], engaged in a protected activity.").

Plaintiff has also adequately alleged that Defendants engaged in conduct that would be "reasonably likely" to deter a person from engaging in protected activity. *See Edelman*, 141 F.4th at 45. The numerous disciplinary letters and summonses Plaintiff received, (Am. Compl., Dkt. 17, at ECF 9–16), could easily provide such deterrence, especially where those disciplinary actions allegedly stymied Plaintiff's career advancement. *See Millea*, 658 F.3d at 165 (in FMLA retaliation context, holding that a formal disciplinary letter constitutes an adverse action, as it "can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that [their] job is in jeopardy").

Finally, Plaintiff has alleged facts sufficient to establish that Defendants' actions were "as a result" of her protected activity. For example, Plaintiff alleges that she emailed Superintendent Julia Bove and Deputy Superintendent Matthew Melchiorre on January 14, 2022, "expressing [her] concerns with [Defendant] Favuzza's untimely summoning [of her] to disciplinary conferences" after Plaintiff's return from leave. (Am. Compl., Dkt. 17, at ECF 9.) Then, on January 27, 2022, she emailed the same two individuals a receipt of her complaint submitted to "New York City's Special Commissioner of Investigations regarding the harassment by [Defendant] Favuzza." (*Id.*) And then, on February 15, 2022, Defendant Favuzza disciplined Plaintiff for "copying the central office on emails regarding school level issues including FMLA leave [and] COVID leave," (*id.*),

which supports the inference that Plaintiff was disciplined *because of* her complaints to superiors about perceived discrimination under the NYSHRL and NYCHRL.

Thus, the Court finds Plaintiff has adequately stated a claim for retaliation under the NYSHRL and NYCHRL.

### D.    Plaintiff Sufficiently Alleges that Defendant Favuzza is Individually Liable Under the NYSHRL and NYCHRL

Finally, the Court addresses whether Defendant Favuzza can be held individually liable for discrimination and retaliation under the NYSHRL and NYCHRL.  Individual defendants can be held directly liable for retaliation under both the NYSHRL and NYCHRL, as well as for discrimination under the NYCHRL.  N.Y. Exec. Law § 296(7) (making it unlawful for "any person" to engage in retaliation under the NYSHRL); N.Y.C. Admin. Code § 8-107(7) (same under the NYCHRL); *id.* § 8-107(1)(a) (prohibiting discrimination by "an employer *or an employee or agent thereof*" under the NYCHRL[15] (emphasis added)); *but see* N.Y. Exec. Law § 296(1)(a) (prohibiting discrimination only by "an employer or licensing agency" under the NYSHRL); *Lee*, 751 F. Supp. 3d at 289 (explaining that individual employees do not qualify as "employers" who can be held directly liable for discrimination under the NYSHRL (citing *Doe v. Bloomberg L.P.*, 143 N.Y.S. 3d 286, 291 (2021))).  Plaintiff has adequately alleged that Defendant Favuzza is directly liable because Defendant Favuzza "actually participate[d] in the conduct giving

---

[15] The Court of Appeals of New York has clarified that direct individual employee liability for discrimination under the NYCHRL is limited to cases where the employee "ha[s] some supervisory role over the victim of their discrimination." *Russell v. New York Univ.*, 42 N.Y.3d 377, 389–90 (2024).  "Supervisory role" is construed broadly "to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment." *Id.*  Here, as Defendants admit, Defendant Favuzza is Plaintiff's "supervisor." (Defs.' Reply, Dkt. 24-5, at 5.)  She therefore has sufficient managerial authority over Plaintiff to be held individually liable for discrimination under the NYCHRL.

rise to" Plaintiff's claims. *Kekovic v. Titan Motor Group LLC*, No. 22-CV-2142 (MKB), 2025 WL 2173651, at *15 (E.D.N.Y. July 31, 2025) (alteration in original) (quoting *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019)); (*see, e.g.*, Am. Compl., Dkt. 17, at ECF 8–15 (describing adverse employment actions taken by Defendant Favuzza)).

Additionally, an individual can be held liable under the NYSHRL and NYCHRL for "aid[ing], abet[ting], incit[ing], compel[ling,] or coerc[ing]" discrimination or retaliation. N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). Aiding-and-abetting liability requires plaintiffs to "plead that the [individual] defendant 'actually participate[d]' in the unlawful conduct of the principal actor"—here, the DOE. *See Nezaj v. PS450 Bar and Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024) (second alteration in original) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). That requires the DOE's conduct to have "also been found to be discriminatory [or retaliatory]." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (quoting *Xiang v. Eagle Enters., LLC*, No. 19-CV-1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020)). Defendants here argue, in substance, that Defendant Favuzza "cannot be held individually liable for aiding and abetting [discrimination] or retaliation" because the DOE is not liable for discrimination or retaliation. (Defs.' Mem., Dkt. 24-1, at 18.) Since the Court has found that Plaintiff's retaliation claims and her NYCHRL discrimination claim survive dismissal, Defendants' argument is largely moot. The Court also notes that an individual defendant "may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012).

Thus, the Court denies Defendants' motion to dismiss Plaintiff's individual claims against Defendant Favuzza under the NYSHRL and NYCHRL.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted in part and denied in part.  The Court denies Defendants' motion to dismiss Plaintiff's FMLA retaliation claim, her NYCHRL discrimination claim based on her caregiver status, and her NYSHRL and NYCHRL retaliation claims.  Those claims shall proceed to discovery.  The Court grants Defendants' motion to dismiss Plaintiff's NYSHRL discrimination claim.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 2, 2026
         Brooklyn, New York